UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:12-cv-01364-TWP-TAB ) |
| RYAN W KOESTER, and RYKOWORKS CAPITAL GROUP, LLC, | ) ) ) ) |
| Defendants. | ) |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-motions for summary judgment. Defendant Ryan W. Koester ("Mr. Koester") filed his Motion for Summary Judgment (Dkt. 30) seeking judgment in his favor on the claims brought against him by the Securities and Exchange Commission ("SEC"). The SEC filed its Motion for Summary Judgment (Dkt. 35) seeking judgment against both Mr. Koester and Rykoworks Capital Group, LLC ("Rykoworks"). For the reasons set forth below, SEC's Motion as to Mr. Koester is **GRANTED** and Mr. Koester's Motion is **DENIED**.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all

reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

An adverse inference from a party's assertion of the Fifth Amendment is permissible in a civil case, but is not required. *Thompson v. City of Chi.*, 722 F.3d 963, 976 (7th Cir. 2013). However, an adverse inference alone is not sufficient to make a finding as a matter of law and additional evidence is needed to corroborate an adverse inference. *Id.*

## II. BACKGROUND

### A. Summary Judgment Procedure

As an initial matter, the Court must address deficiencies in Mr. Koester's Response, and Cross-Motion for Summary Judgment. As mentioned above, summary judgment is governed by Federal Rule of Civil Procedure 56. A movant seeking summary judgment must show "that there is no genuine dispute as to any of the material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party must support its factual positions by citing to "particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party may also show that cited materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An affidavit submitted with a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Local Rule 56-1 governs summary judgment procedure in this District. A movant is obligated to include in his or her brief a "Statement of Material Facts Not in Dispute" containing the facts "that are potentially determinative of the motion" and "as to which the movant contends there is no genuine issue." S.D. Ind. L.R. 56-1(a). A non-movant may, within 28 days after the motion, file and serve a response brief that must include a section entitled "Statement of Material Facts in Dispute" that identifies determinative facts and controverts those facts. L.R. 56-1(b). The Court will deem facts admitted without controversy to the extent they are supported by admissible evidence and not specifically controverted. L.R. 56-1(f). The Court has no duty to search the record not specifically cited by the parties. L.R. 56-1(h). Further, the Seventh Circuit and Local Rule 56-1 require that "[a] party seeking summary judgment against an unrepresented party must serve that party with the notice contained in Appendix A." Local Rule 56-1(k); *see Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992).

Mr. Koester's Motion for Summary Judgment does not contain the required "Statement of Material Facts Not in Dispute," or any statement of fact. Courts liberally construe the pleadings of individuals that proceed *pro se*, but the Court is not required to search the record to support Mr. Koester's position. *Greer v. Bd. of Educ. of City of Chi., Ill.*, 267 F.3d 723, 727 (7th

Cir. 2001). Additionally, although Mr. Koester was served by SEC with a Notice to *Pro Se Defendant of Filing of Summary Judgment Motion* (Dkt. 33), he has not responded to SEC's motion. Thus, faced with only SEC's statement of material facts not in dispute and finding them supported by admissible evidence, the Court accepts SEC's statement of material facts not in dispute for purposes of this motion. However, the Court's standard for considering those facts remains in the light most favorable to Mr. Koester, as explained more fully below.

**B.  Factual History**

The Court adopts "The Undisputed Material Facts" as set forth by SEC in docket entry 32, contained on pages 2 through 16 in paragraphs 1 through 51. A brief summary of those facts is as follows: Mr. Koester is a resident of Brownsburg, Indiana. He is the sole owner and operator of Rykoworks, an inactive Indiana limited liability company that operates in Brownsburg, Indiana. Mr. Koester has never held any securities licenses. Indiana authorities have filed pending state criminal charges against Mr. Koester in *State of Indiana v. Ryan Koester*, Cause No. 41C011205FB00028 (May 16, 2012). Beginning around September 2010, Mr. Koester is alleged to have participated in a fraudulent investment scheme in which he, Rykoworks, and others misappropriated nearly $1.7 million of investor money. Mr. Koester purported to be an expert foreign currency trader and represented to investors that his unique trading strategy offered investors a principal guaranteed investment opportunity. The investor funds were transferred to Mr. Koester through Rykoworks, an entity he controlled, where the funds were pooled and then depleted through trading losses and Mr. Koester's misappropriation of funds for his personal expenses.

In connection with the scheme, Mr. Koester and the other defendants knowingly made materially false representations to investors regarding both the nature of the investment and the

intended and actual use of investors' funds. Mr. Koester also provided investors with materially false account information and statements in an attempt to conceal his fraudulent misuse of investors' funds. In so doing, the SEC alleges that Mr. Koester, Rykoworks and the other defendants violated Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] (the "Securities Act").

## III. DISCUSSION

In its Complaint, the SEC alleges that Mr. Koester violated Section 10(b) of the Securities Act. To prevail, the SEC must establish that (1) in connection with the offer or sale of securities; (2) Mr. Koester made material untrue statements or material omissions, or employed or engaged in a scheme to defraud (scheme liability); and (3) he acted with the requisite scienter, in that he intended to deceive, manipulate or defraud investors, or acted recklessly. *See SEC v. Zandford*, 535 U.S. 813, 820–21 (2002). The Court agrees with SEC that the undisputed facts establish each element, and SEC is entitled to judgment as a matter of law.

**A.    Sale of Securities**

The definition of security is broad, and includes an "investment contract." *See* 15 U.S.C. § 77b(a)(1); *Lincoln Nat'l Ins. Co. v. Bezich*, 610 F.3d 448, 449 (7th Cir. 2010). To determine whether a particular scheme is an investment contract, courts ask "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946)). The term "profits must come solely from the efforts of others" refers to the "profits that investors seek on their investment, not the profits of the scheme in which they invest." *Id.* In the Seventh Circuit "common enterprise" is analyzed under the "horizontal commonality" test, which is satisfied where "multiple investors pool their investments and

receive pro rata profits." *Goldberg v. 401 N. Wabash Venture LLC*, 904 F. Supp. 2d 820, 848 (N.D. Ill. 2012) (quoting *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984)).

Here, Mr. Koester's scheme was an investment contract. Clients invested their money with Mr. Koester upon his representation that funds would be used for foreign currency trading. Investor money was pooled in a Rykoworks trading account. The promissory notes produced show that investors expected to share in the trading profits on a *pro rata* basis. Thus, SEC has established that Mr. Koester was involved in the sale of securities.

**B.     Material Untrue Statements**

A statement is material if it "so alters the 'total mix' of information to the investor that is has the potential to affect the [investment] decision." *LHLC Corp. v. Cluett, Peabody & Co., Inc.*, 842 F.2d 928, 931 (7th Cir. 1988). SEC contends that Mr. Koester made various material and untrue statements to investors, including that money would be used for foreign exchange trading, that investors could expect returns exceeding 8.4% that investments were principal guaranteed, and that investors would receive returns based on trading performance. Mr. Koester contends that he did not guarantee an investor's principal against loss, and he cites to two documents that are purportedly investment agreements which do not include guarantee language. Yet, SEC has produced actual signed investment agreements between investors and Mr. Koester that clearly state that under the profit-sharing scheme, "[p]rinciple investment is guaranteed regardless of market performance." Dkt. 34-4 at 2; Dkt. 34-25 at 2; Dkt. 34-31 at 2; Dkt. 34-36 at 2; Dkt. 34-37 at 2; Dkt. 34-54 at 2 (under seal); Dkt. 34-55 at 2; Dkt. 34-62 at 2 Dkt. 34-65 at 2. In these same and additional agreements, it is further stated that a rate of return is guaranteed depending on the term of the agreement. *See, e.g.*, Dkt. 34-23 at 2 ("Minimum rate of return: 3%

guaranteed."); Dkt. 34-60 at 3 (same). Additionally, SEC has produced an agreement, signed by Mr. Koester that is titled "Guaranteed Income Agreement." Dkt. 34-58 at 2. Thus, it is well-supported by the record that Mr. Koester made guarantees by entering into the investment agreements. Mr. Koester's promotional materials also guaranteed a low risk of loss and he verbally guaranteed that the principal investment was protected against loss. *See, e.g.*, Dkt. 34-76 at 2; Dkt. 34-81 at 16 (under seal).

SEC concedes that "a portion of the investors' funds were invested in the foreign exchange market," Dkt. 32 at 26, but contends that Mr. Koester falsely guaranteed principle investments and amount of risk, because he depleted investors' money through trading losses and personal spending. Further, he provided false account records that showed growing account balances, *see* Dkt. 34-32; Dkt. 34-33; Dkt. 34-34, when in reality, Mr. Koester had lost the investors' money. During the SEC's pre-suit investigation and during discovery after the SEC filed its complaint, when asked if he provided false account statements, Mr. Koester asserted his Fifth Amendment privilege.

Given the above and the testimony from investors that they relied on Mr. Koester's representations when deciding to invest, *see, e.g.*, Dkt. 34-80 at 15, the Court finds that the statements made by Mr. Koester in the written agreements, the promotional materials, and directly to investors were material and false. Further, these statements were made in connection with the sale of a security.

C. **Intent to Deceive, Manipulate, or Defraud Investors**

"[O]nly persons who act with an intent to deceive or manipulate violate Rule 10b-5." *SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998). "Reckless disregard of the truth counts as intent for this purpose." *Id.* SEC alleges that Mr. Koester knowingly made the

7

misrepresentations and omissions to investors, because he was suffering trading losses and was using the funds for personal benefit. *Compare* Dkt. 34-2 at 7 (showing investor's "actual monthly returns" in 2010), *with* Dkt. 34-70 at 2 (showing investment losses between December 21, 2008 and January 25, 2012, totaling $705,437.73). Mr. Koester has not provided any argument or evidence to create a disputed issue of fact on this element. When asked in deposition about the promotional materials and account statements, Mr. Koester invoked his Fifth Amendment privilege. Based on the above, the Court finds that SEC has established the requisite scienter.

**D.    Relief**

SEC seeks multiple forms of relief in its Motion. First, it asks the Court to permanently enjoin Mr. Koester from violating federal securities laws. *See* 15 U.S.C. § 78u(d)(1). Second, it asks for disgorgement of Mr. Koester's ill-gotten gains, totaling $339,596.00. *See SEC v. Koenig*, 557 F.3d 736, 745 (7th Cir. 2009). Finally, it seeks imposition of the maximum civil penalty under the law. *See* 15 U.S.C. § 78u(d)(3)(B)(iii).

First, after the SEC proves a violation of federal securities laws, it may obtain a permanent injunction against future violations if there is a reasonable likelihood of repeat violations.

> In making this evaluation, the court considers the gravity of harm caused by the violation, the extent of the defendant's participation and the degree of scienter, whether the violations were isolated or recurring, the likelihood that a defendant's customary business activities might involve him in similar transactions again, the defendant's recognition of his culpability, and the sincerity of assurances from the defendant that he will not violate the law in the future.

*SEC v. Church Extension of the Church of God, Inc.*, 429 F. Supp. 2d 1045, 1048 (S.D. Ind. 2005). SEC need not prove every factor to secure an injunction. *Id.* Here, the evidence is abundant that Mr. Koester had a moderate to high degree of scienter, was the figurehead of the

investment scheme, and has shown no culpability or remorse for his actions. Therefore, the Court finds that a permanent injunction is an appropriate equitable remedy. Mr. Koester should be permanently enjoined from future violations of Section 17(a) of the 1933 Act, Section 10(b) of the 1934 Act, and Rule 10b-5.

The Court declines to rule at this stage on the financial remedies of disgorgement and statutory penalty. Because Mr. Koester is proceeding *pro se* and has not responded to SEC's motion or request for penalties, the Court will set a hearing to address these matters.

**E.     Defendant Rykoworks, LLC**

As a final matter, the Court notes that SEC filed its motion against Rykoworks, but Rykoworks has never answered, participated, nor has counsel appeared on its behalf and a limited liability company cannot represent itself *pro se*. Further, SEC has not filed for default judgment. A closer reading of the docket, however, shows that while SEC issued a summons for Defendant Rykoworks, a return of service was never filed. Therefore, the Court enters a show cause order as to why Rykoworks should not be dismissed from this suit for failure to effectuate service under Federal Rule of Civil Procedure 4(m).

## IV.  CONCLUSION

Accordingly, the Court makes the following rulings: Mr. Koester's Motion for Summary Judgment (Dkt. 30) is **DENIED**. SEC's Motion for Summary Judgment (Dkt. 35) is **GRANTED**. Mr. Koester is **PERMANENTLY ENJOINED** from future violations of Section 17(a) of the 1933 Act, Section 10(b) of the 1934 Act, and Rule 10b-5. SEC is **ORDERED TO SHOW CAUSE** as to why Rykoworks, LLC should not be dismissed from this action for failure to effectuate service under Federal Rule of Civil Procedure 4(m) within **fourteen (14) days of the date of this Entry**.

A hearing on the issue of financial remedies sought by SEC will be held on <u>June 11, 2014 at 2:00 p.m</u>. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, Indianapolis, Indiana.

Final judgment will not issue until all pending matters are resolved.

**SO ORDERED.**

Date: 04/02/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ryan W. Koester
1240 Highland Lake Way
Brownsburg, Indiana 46112

Charles D. Stodghill
U.S. SECURITIES AND EXCHANGE COMMISSION - Washington D.C.
Stodghillc@sec.gov

Devon Anthony Brown
U.S. SECURITIES AND EXCHANGE COMMISSION - Washington D.C.
brownde@sec.gov

Brian Fitzsimons
U.S. SECURITIES AND EXCHANGE COMMISSION - Washington D.C.
fitzsimonsb@sec.gov